### GEORGE v. BIRCHFIELD.    (No. 8555.)

(Court of Civil Appeals of Texas.    Galveston.
June 18, 1924.)

**1. Contracts ⬤⟿94(1)—Contract not binding, where induced by false representations.**

One who has, by false representation, induced another to enter into a contract cannot hold the other bound by the terms of such contract.

**2. Evidence ⬤⟿434(8)—Fraudulent representations in procuring execution of contract may be shown by parol.**

Fraudulent representations in procuring execution of a contract may be shown by parol, though written contract provides that it comprises entire contract between parties, and that any verbal representation outside its terms shall be void.

**3. Sales ⬤⟿38(2)—Seller's knowledge of falsity of representations held immaterial.**

Where representations made by a seller to induce buyer to purchase tractor were false, and made for the purpose of inducing buyer to execute contract and purchase tractor, it was immaterial whether seller knew that such representations were false, where buyer knew nothing of operation and capacity of machine, and relied upon seller's representations, and was induced thereby to enter into the contract.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by R. B. George against J. T. Birchfield. Judgment for defendant, and plaintiff appeals. Affirmed.

Hunt & Teagle, of Houston, for appellant.
Franklin & Blankenbecker, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellant against appellee to recover upon promissory notes executed by appellee in part payment of the purchase price of a traction engine sold him by the Twin City Company through appellant, its state agent, and to foreclose a mortgage upon the engine executed by appellee to secure the payment of the notes. In answer to plaintiff's suit defendant pleaded that the execution of the contract for the purchase of the engine and the notes sued on was obtained by the fraudulent misrepresentations of plaintiff.

The plaintiff sues as the owner of the notes and mortgage. The petition is in the usual form of a petition in a suit upon a note and to foreclose a mortgage. The defendant's answer avers that the contract for the purchase of the engine was obtained from him by appellant R. B. George, the general manager of the Twin City Company in Texas, and B. P. Clark, the assistant manager of said company, under the following circumstances:

Defendant went to the office or place · of business of said company in Dallas, Tex., for the purpose of purchasing an extra piece of machinery for a threshing separator owned by him, and while there George and Clark proposed to sell him an oil-burning engine or tractor with which to operate his threshing machine, which he was then operating with a Case engine. .

"That in order to induce the defendant to purchase such tractor George and Clark, as agents aforesaid, fraudulently represented to him:

"(1) That the tractor would operate his separator with less expense and trouble than his old engine, and that a boy or inexperienced hand could operate it, and that he would save the expense of an extra team and hand, and that it would not be necessary to have a high-priced or experienced man to attend to it.

"(2) That it was an oil-burning engine, and would use coal oil and kerosene or distillates or other low grade fuels, and would use any kind of low grade fuel that any other engine could use, and would operate successfully on such fuel.

"(3) That said engine would operate and run on not more than 60 gallons of oil per day of 10 hours steady run, and about 2 gallons of lubricating oil, and would successfully operate his separator fed in the usual and customary manner on said fuel and oil.

"(4) That said engine would successfully pull and operate his separator with all the grain that the separator would take with a feeder on each side. That George and Clark were acquainted with the character of feeder owned by the defendant at that time and used by him on his thresher, and further knew that it was customary and usual for a man to stand on each side and place grain in the feeder.

"(5) That said engine would successfully operate the separator owned by the defendant, which was a 32x56 Red River special, in all kinds of grain, and that the said George and Clark were familiar with the Red River special and with the method of operating it, and knew that it was customary for a man to stand on each side of the feeder and place in the feeder all the grain it would contain, and by their representations intended to mean and did mean that said tractor would operate the defendant's separator while being fed in the usual manner with the customary quantity of grain.

"(6) That the gear in said tractor was steel cut, and that there was no possible chance for it to give trouble.

"(7) That said engine would not get hot enough for the water to boil in the radiator or otherwise to become overheated, and would run properly and successfully.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(8) That said engine was a successful oil-burning engine in every respect. That the defendant believed said statements and representations, and in reliance thereon on the 26th day of April, 1919, agreed to and did purchase from the Twin City Company through R. B. George and S. P. Clark, its agents aforesaid, the Twin City 25 H. P. engine mentioned above and in controversy in this case."

It is then averred that each of these representations was a material inducement to defendant to execute the contract for the purchase of the engine, and that all of them "were untrue in fact, and were made for the wrongful and fraudulent purpose of inducing, and did induce defendant to execute the contract and the notes sued on."

The want of knowledge on the part of defendant of the capacity and adaptibility of oil-burning engines for the operation of threshing machines and his reliance upon the representations of plaintiff are fully averred. The answer also makes tender of the engine, which it is averred had theretofore been tendered to plaintiff, and prays that the notes and contract be canceled and that plaintiff take nothing by his suit.

The defendant also pleaded that he would have returned the tractor to plaintiff the first day he operated it but for the representations of the plaintiff, the Twin City Company, and that the said George Clark requested him to operate it, as they could and would fix it, and that he relied upon such representations, which continued up to and including August 10, and that said George and Clark, and each of them, told him that he did not have to take said tractor until it complied with their representations.

Plaintiff by supplemental petition excepted generally and specially to defendant's answer, and further pleaded as follows:

"And this plaintiff denies all and singular the allegations in said amended answer contained, and of this he puts himself upon the country.

"And as to all the allegations in said answer which attempt to recover damages, plaintiff says that, if defendant ever had any cause of action by reason thereof, the same accrued more than two years prior to the filing of said cross-bill, and is therefore barred by the statute of limitations, which plaintiff specially pleads in bar thereof.

"And, answering the allegations of said answer wherein the defendant pleads that a warranty of said engine was given to him, plaintiff says that a written warranty was given, and that the Twin City Company has in all things complied with the terms of such warranty, and has fully performed its contract with the defendant; that at the time the contract of sale was closed the Twin City Company and defendant entered into a written contract of sale, a copy of which was, duly signed and delivered to the defendant, and which contract contained the following clause, among others:

" 'The company warrants the machinery for one year to be well made and of good material and durable, if used with proper care. If within one year from date of shipment of the said machinery any part shall fail by reason of defective material or workmanship, the Twin City Company will furnish a new part free of charge f. o. b. factory, provided the broken part is delivered to the factory of the said company, transportation prepaid, with satisfactory evidence that its failure was due to defective material and workmanship.'

"And plaintiff says that no complaint was made to this plaintiff, to the Twin City Company, or to any of its authorized agents, that any part of said engine was defective on account of material or workmanship, nor was any such part or parts ever returned to the factory within the terms of said contract, nor was any part ever tendered to the plaintiff, to the Twin City Company, or to any agent, with a request for a new part, and so far as this plaintiff is advised no complaint was ever made of any defective part of such machine, and plaintiff says that, if any parts were defective, the same could and would have been replaced with a new part upon the conditions expressed in said contract, but the defendant, having failed to make such a demand, and having failed to return such parts, freight prepaid, is now estopped to claim anything by reason of that part of said warranty, all of which this plaintiff is ready to verify.

"That said contract of sale contained, among other things, the following agreement:

" 'If upon three days' trial after the said machine is first started, with proper care and under favorable conditions, it fails to work, the purchaser shall immediately give notice by registered mail or wire to the seller at its office in Minneapolis, Minn., and to the agent through whom it was purchased, stating wherein the machine fails, and shall allow a reasonable time for a competent man to be sent to put it in good order, and the purchaser shall render necessary and friendly assistance to operate it. If the machine cannot then be made to work under ordinary conditions, the purchaser shall immediately return it to said agent in as good condition as when received (except for ordinary wear). The company will either furnish another machine with the same above warranty, or (at its option) all cash notes paid on the purchase price shall be forthwith refunded to the purchaser, which shall constitute a settlement in full of the transaction and operate as a release of all claims of both buyer and seller arising out of this contract. Failure to give notice within the three days specified shall operate as an acceptance of said machine and a complete fulfillment of this warranty.

" 'This instrument comprises the entire contract between the parties hereto, and any verbal representations and agreements outside of, or contradictory to, the foregoing terms and warranty are hereby agreed to be void for all purposes whatsoever.'

"And this plaintiff says that said engine was duly delivered to the defendant, was used by him during the summer and fall of 1919, and has been used by him since said time; that he still has the same, has used it, and that he did not tender the same back as provided by said contract of sale; that this plaintiff and the Twin City Company sent its experts to the defendant for the purpose of putting said

engine in operation, and that this was done to the satisfaction of the defendant, and he thereafterwards continued to use said engine, and still has the same in his possession, and has in no manner complied with the terms of said contract of sale, has not demanded a new engine, has not demanded the making of any repairs which were not made, and has never demanded the replacement of any parts, and is therefore now estopped from pleading any breach of said warranty or from recovering anything by reason thereof on his cross-claim against this plaintiff, all of which he is ready to verify."

The execution of the contract and notes as alleged in plaintiff's petition was admitted by the defendant, who filed, before the trial began, the following written admission:

"Now comes the defendant, J. T. Birchfield, before the commencement of the trial, and admits that the plaintiff has a good cause of action as set forth in the petition, except so far as it may be defeated in whole or in part by the facts of the answer constituting a good defense, which may be established on the trial."

The fact issues raised by defendant's answer were submitted to a jury.

In special issue No. 1 the court submitted to the jury the issue as to whether or not George and Clark made the representations as to what the engine would do and perform, and the jury found they did.

In special issue No. 2 the court submitted to the jury the issue as to whether or not Birchfield relied on such statements and representations, and the jury found that he did.

In special issue No. 3 the court submitted the issue as to whether the statements and representations made by George and Clark were fraudulently made and for the purpose of inducing the defendant to enter into said contract, and the jury answered that they were.

In special issue No. 4 the court submitted the question as to whether or not the engine failed to meet such oral statements or representations, to which the jury answered it did.

In special issue No. 5 the court submitted the question as to whether or not the engine would operate a 32x56 separator successfully in all kinds of grain, to which the jury answered "No."

In special issue No. 6 the court submitted the issue as to whether or not George and Clark, or either of them, agreed with defendant that he would not be required to pay for the engine unless the same was made to operate successfully, to which the jury answered "Yes."

In special issue No. 7 the court submitted the question as to whether or not said engine was caused to operate successfully before the time defendant refused to keep and pay for it, to which the jury answered "No."

On the findings of the jury the court entered judgment denying the plaintiff any recovery, and in favor of the defendant canceling the notes, returning the engine to R. B. George, and for costs of court in favor of the defendant.

Without setting out the testimony, we find there was sufficient evidence to sustain each of the findings of the jury. This appeal is predicated upon the following propositions:

"First. The parol testimony of defendant and Robert Queen was not admissible to show additional warranties, because the contract was in writing, and the warranties contained therein and such contract expressly stipulated that no verbal statements or warranties made by any agents should be binding on the principal, and that the only warranties were contained in the written instrument.

"Second. The uncontradicted facts showed that Clark and George were the agents of the Twin City Company in making the sale, and that defendant knew that they were such agents, and he then and there entered into the contract which contained the written warranties which he signed, and therefore had no right to rely on parol warranties of the agents.

"Third. One claiming a release from a contract on the ground of fraudulent representations must not only prove that such representations were made, but that same were made with the fraudulent intent of inducing the complaining party to enter into the contract in question, and, where the facts do not show such fraud or fraudulent intent, there is no basis for a judgment rescinding the contract on that account.

"Fourth. Where a buyer purchases a machine under a written contract calling for a trial and the return thereof in case of dissatisfaction, he cannot use the machine after the period for the test has expired, and then claim rescission.

"Fifth. Where the buyer of a machine, sold on trial with a provision for its return when the test is made, keeps the said machine, and uses the same thereafter, and signs a written statement that the machine meets the test and his satisfaction, he cannot thereafter rely on rescission, but must sue for his damages for breach of warranty, if he has any action at all.

"Sixth. The defendant having accepted the engine in writing a number of days after the trial test, he waived his right of rescission, and, not having asked for damages in this action, he was entitled to no relief, and judgment should have been rendered in favor of the plaintiff for the amount sued for.

"Seventh. When the written contract of sale provides that when the machine sold does not meet the warranty that immediate notice must be given to the agent and the seller by registered mail, the buyer must allege and prove a compliance with this provision before he can claim rescission."

[1] We shall not discuss each of these propositions in detail, or separately. Most of them are predicated upon the assumption that the contract upon which appellant's suit is based is valid. The findings of the jury before set out, which are amply sustained

by the evidence, establish the fact that the execution of the contract by the appellee was induced by the fraudulent representations of the appellant. It is a sound principle of law and of morals that one who has by false representations induced another to enter into a contract or agreement cannot hold the other bound by the terms of such contract. The principle is thus stated in 1 Elliott on Contracts, par. 70:

"If one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the agreement, such that, if he had known the truth, he would not have given his assent, the contract may be avoided by him. There can be no real assent when it is induced by fraud."

[2] That such fraudulent representations may be shown by parol evidence, notwithstanding a provision in the written contract that the instrument comprises the entire contract between the parties, and that any verbal representations and agreements outside of the terms and warranties contained in the instrument shall be void, is well settled. J. I. Case Threshing Machine Co. v. Webb (Tex. Civ. App.) 181 S. W. 853; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S. W. 873. To hold otherwise would make the rule against varying or changing written instruments by parol evidence, which was designed to prevent fraud, operate for its encouragement and protection.

[3] The evidence shows that the representations made by appellant as alleged in appellee's answer before set out were false, and were made for the purpose of inducing appellee to execute the contract to purchase the tractor. It is immaterial whether the appellant knew these representations were false. Appellee, who knew nothing of the operation and capacity of a machine of this kind, relied upon these representations, and was induced thereby to enter into the contract, and the law regards them as fraudulent, and relieves appellee from the obligations of the contract. Halff v. Jones (Tex. Civ. App.) 169 S. W. 907; Martin v. Iroquois Co. (Tex. Civ. App.) 207 S. W. 569; Fenley v. Crawford (Tex. Civ. App.) 237 S. W. 590.

The contract being void, appellant was not bound by any of its provisions. The evidence shows and the jury found that the appellee acted in perfect good faith in the transaction. As soon as he found that he had been deceived by the representations of appellant he repudiated the contract and offered to return the machine, and he only continued his efforts to make it operate as appellant had represented it would at the request and on the promised assurance of appellant that he would not be held to his contract, unless the machine would so operate. The evidence in regard to the written statement made by appellee that the machine was satisfactory justified the conclusion of the jury that the statement was signed by appellee without knowing its purport, and was not true. The question was purely one of fact to be determined by the jury. No estoppel was raised by the statement, and appellant acquired no contract rights thereunder.

We are of opinion that the judgment should be affirmed.

Affirmed.