### LUCCHESE v. THOMAS GOGGAN & BROS.
#### (No. 7025.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 28, 1923. Rehearing Denied Jan. 9, 1924.)

**1. Sales ⬥117, 120—Buyer may rescind if article delivered is not the article contracted for, or is not as warranted.**

If the article tendered or delivered is not the article contracted for, or its quality is not as expressly warranted, buyer may rescind and recover the part of the purchase price paid as well as consequential damages.

**2. Sales ⬥121, 124, 176(5), 392—Buyer continuing to use article with knowledge of defects not entitled to rescind; on rescission buyer must return goods.**

In order to enforce the remedy of rescinding and recovering the purchase price, buyer must not accept and use the article with knowledge of the failure or the defect of quality, or, having accepted it without such knowledge, he must upon discovery act promptly, disaffirm the contract, tender back the article, and exercise no further dominion over it, unless it be at seller's request to enable him to make the article conform to the warranty.

**3. Sales ⬥398—On rescission allowance made for buyer's use of article.**

In the event of a rescission buyer's recovery of the purchase price, or of any consequential damages, will be offset by the value of buyer's use of the article while it was being tested.

**4. Sales ⬥397—On rescission, buyer has burden of showing value of use of article sold.**

On rescission for breach of warranty, where buyer has used the article sold, he has the burden of showing the value of such use, so that proper credit therefor may be given the seller.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Thomas Goggan & Bros. against Sam Lucchese. Judgment for plaintiff, and defendant appeals. Affirmed.

C. A. Davies, Bascom Bell and Sam D. W. Low, Jr., all of San Antonio, for appellant.

Boyle, Ezell & Grover and R. N. Gresham, all of San Antonio, for appellee.

SMITH, J. This a controversy between Lucchese, operating the National Theater, and Goggan & Bros., dealers in musical instruments. Both parties are domiciled in the city of San Antonio. In March, 1917, the parties entered into a written contract, under the provisions of which Lucchese purchased a pipe organ from the Goggans, who obligated themselves to set up the instrument in Lucchese's theater. The written contract contained the following, among other provisions:

"The builder agrees that the organ when completed shall be first class in every respect, and agrees to correct defects in material or workmanship that may be brought to his attention within 5 years from date of completion, without cost to the lessee, but this shall not include tuning or ordinary care and maintenance of the organ."

The jury found, upon sufficient evidence, that (1) the organ was not "first class in every respect;" (2) that the buyer notified the sellers "of the defects in said organ;" and (3) that the sellers did not "correct such defects." No other issues were submitted to the jury, but the court found in written conclusions filed that there was no acceptance of the organ by the purchaser; that the latter got some use of the instrument; that this use had some value, but that there was no evidence to show the amount of the value of such use. Upon these findings the court rendered judgment for rescission, decreeing return of the organ to the sellers, but allowing the purchaser nothing upon his cross-action, in which he sought to recover the amount he had admittedly paid upon the purchase price. The latter relief was denied the purchaser upon the ground, as stated by the trial court, that the purchaser had failed to meet the burden placed upon him to show the value of the use he had made of the organ so that credit therefor could be given the sellers. Lucchese has appealed, contending that he was entitled to recover the entire sum he had paid towards the purchase of the organ.

[1, 2] There is much confusion and conflict among the authorities as to the appropriate remedy vouchsafed to the purchaser of personal property in case of failure of express warranty of quality. We perceive no useful purpose to be served by analyzing or reconciling or discussing these authorities. We think the weight of authority is such as to establish the rule that, if an article tendered or delivered is not the article contracted for, or if its quality is not as expressly warranted, the purchaser may rescind the contract of sale, and recover so much of the purchase price as he has paid, as well as

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

consequential damages. But, in order to enforce this remedy, the purchaser must not accept and use the article with knowledge of the failure or defect of quality, or, having accepted it without such knowledge, he must, upon discovery, act promptly, disaffirm the contract, tender back the article, if it be not entirely worthless, and exercise no further dominion over it, unless it be at the request of the seller to enable the latter to make the article conform to the warranty.

[3, 4] If the purchaser obtains a valuable use of the article while its serviceability is being tested and determined, as the trial court found to be the case here, then in event of rescission by the purchaser the latter's recovery of the purchase price paid, or of consequential damages, will be offset by the amount of the value of such use. In such case the burden is upon the purchaser to show his net damages.

This cause appears to have been tried in accordance with the foregoing rules, and, as the record presents no reversible error, the judgment will be affirmed.

### On Motion for Rehearing.

PER CURIAM. There is no grander, no nobler profession than that of the law, and for many centuries among English speaking peoples that profession has not only furnished men to don the ermine and adorn the bench, but has given to organized government its strongest, most intelligent support. From this great profession have emanated constitutions to form the basis of human law and bills of right, upon which rest human liberty, and human peace and happiness. The members of the legal profession have peculiar obligations administered to them, and they are constituted supporting arms of the judicial branch of the government, and, without their loyal sympathy, aid, and assistance, the powers of the courts are impaired, their influence weakened, the administration of justice thwarted, and human rights denied.

Between the courts, therefore, and the attorney at law, the greatest mutual confidence and respect should at all times prevail. Through all the ages of civilized government there has existed mutual sympathy, both being actuated by high ideals of the administration of justice and the enforcement of law, and never in the history of our country was this state of mind more demanded than at the present, when constituted agencies of government are flouted and treated with contempt, not only by individuals but by organizations that would impair judicial functions and dictate the method of the administration of the constitutional powers of the courts. Even members of Congress make onslaught on the Supreme Court of the United States. Peculiarly bound by his official oath to support and uphold the Constitution, federal and state, every attorney at law is called upon for the highest loyalty and respect for the courts of the country, and no attorney, who, if he comprehends his relation to the courts as an officer thereof, and desires to maintain the honor of his profession, as well as preserve the power for good of the judicial agencies of government, should in his intemperate zeal for his client disregard the duties resting upon him in that regard. In the very nature of things some must lose, while others win, and the highest test of the finished lawyer is the power not only to succeed without arrogance, but to lose without ill temper and untimely condemnation and unjust criticisms of the courts of the country.

The motion in this case is not an expression of that feeling of confidence and respect that should characterize the pleading of the lawyer loyal to the true ideals of the profession, and only a regard for the rights of the unoffending client has prevented this court from striking it from its files. There is no merit in the motion, and it is overruled, and this court again gives its warning to the offending attorney. It may be learned yet by those offending against the proprieties that, although "justice moves with a leaden heel, it strikes with an iron hand."

Motion overruled.