Raymond HOWELL et ux., Appellants,

v.

MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Appellee.

No. 3893.

Court of Civil Appeals of Texas.

Eastland.

June 26, 1964.

Rehearing Denied July 17, 1964.

Baker, Jordan, Shaw & Foreman, Tom Shaw, Harvey Davis, Dallas, for appellants.

Howell, Freels & Crawford, Joe Crawford, Denison, for appellee.

WALTER, Justice.

Raymond Howell and wife filed suit against Missouri-Kansas-Texas Railroad for damages resulting from a crossing accident in which their son Jimmie Ray Howell was killed. Based upon the verdict,

judgment was rendered for M. K. & T. The Howells have appealed.

They contend that the court erred in receiving in evidence photographs and motion pictures which were taken more than a year after the collision; they contend this evidence purported to demonstrate to the jury the scene of the accident and the approaches to the crossing. They contend the demonstrations and experiments were made under conditions and circumstances so substantially different from those existing at the time of the accident as to confuse and prejudice the jury.

The wreck occurred at night on February 4, 1961. It was raining and sleeting. Jimmie Ray was driving a pickup truck. He approached the railroad crossing from the north on North First Street in the City of Garland driving about twenty or twenty-five miles per hour. M. K. & T's train approached from the west traveling about twenty-five or thirty miles per hour. At the time of the collision the condition of the area from the road and the railroad track to the west was substantially as follows: About four hundred feet north of the crossing there was a railroad crossing sign. A Lone Star Gas Company building is located approximately three hundred and fifty feet north of the crossing. Cedar trees twelve feet high, brush, shrubbery, power and telephone poles and entrance posts were also located in this area. There were piles of gravel, trucks, county shops and barns, butane tanks, sheds and an office building also located in this area.

The gravel, trucks, office building, shops barns and tanks were removed after the accident and before photographs and motion pictures were taken. Photographic color picture slides of the scene were taken by the claim agent at about 9:00 in the morning on a clear day more than a year after the collision. Under his direction, motion pictures were taken of the area at night under good weather conditions more than a year after the wreck. The movies were taken from a car approaching the crossing from the north showing oncoming traffic and a train approaching from the west. Appellants objected to this evidence because no proper predicate was laid for its introduction; no evidence that the train was traveling at a similar speed at the time the experiment was made and at the time of the accident; no evidence that the car in which the films were taken was traveling at the same speed as Howell's pickup truck; no evidence that the films portrayed the scene similar to the conditions existing at the time of the accident, in that, it was not raining when the films were made and the undisputed evidence showed that the physical conditions of the crossing area were not the same as those existing on the night of the fatal crash.

G. P. Pargen lived in Garland and was employed in the Engineering Department of the railroad. He testified substantially as follows: He made a detailed survey of the area in question on February 15, 1962, locating all objects on the west side of First Street to a point where the Santa Fe crosses the M. K. & T's main line and from the railroad crossing sign approximately four hundred feet north of the tracks to the crossing. This map was introduced in evidence. This map did not show the trucks, truck sheds, the gravel, the house or gas pump which were there at the time of the accident. On cross examination he was required to show the location of all the missing obstructions and locate them on the map.

On the day following the accident he visited the crossing and the approaches thereto. As he traveled from the Lone Star Gas Company building to the crossing, Mr. Pargen said that the railroad was visible at different intervals but not above the high point of the gravel pile. He visited the area at night and said he was always able to observe an approaching train and that he was always able to see the oscillating light but sometimes could not see the headlight on an approaching train.

Robert Ray Jones of the Garland police department investigated the accident. A few days thereafter he made some experi-

ments at night to determine if approaching trains from the west were visible to a driver of an automobile proceeding south along First Street after one passed the Lone Star Gas Company building and proceeded on toward the crossing. This experiment was conducted when the physical conditions of the area were similar to those that existed on the night of the wreck. He was asked, "Yes, sir. And from that point on is he able to see the approach of the train, the headlight of the train as he drives on down to the track if he looks?" And he answered: "Yes, sir. You can see the headlight."

■ From the testimony of Pargen, Jones, other witnesses, and from exhibits, it was made clear to the jury that the slides and motion pictures were made at a time when it was not raining and when some of possible obstructions in the area had been moved. Defendant's Exhibit No. 25 was introduced in evidence without objection. It was a photograph of the area on the west side of First Street before the possible obstructions had been moved. Also the testimony of the witnesses Jones and Pargen was that soon after the accident when the physical conditions were the same that after passing the Lone Star Gas Company building about 350 feet north of the crossing one could see the train. No point is made that the Jones and Pargen experiment was not proper. Appellants rely upon the recent case of Fort Worth and Denver Railway Company v. Williams, dated February 1, 1964, Tex., 375 S.W.2d 279 as authority for their contention that the court erred in overruling their objection to the slides and motion pictures introduced in evidence by the appellee.

In the Williams case the court said:

"In order to render evidence of an experiment made out of court and without the presence of the opposing party admissible, it is generally held that there must be a substantial similarity between conditions existing at the time of the occurrence which gives rise to the litigation and those in existence at the time the experiment is conducted for demonstration purposes. It is not, however, essential that the conditions of the occurrence and the experiment be identical. Houston, East & West Texas Ry. Co. v. Sherman, Tex.Com.App., holdings approved by the Supreme Court, 42 S.W.2d 241 (1931); Rodgers v. State, 93 Tex.Cr.R. 1, 245 S.W. 697 (1922). When there exists a dissimilarity, testimony of an experiment should be excluded when the result thereof would probably confuse rather than aid the jury. There exists an area wherein the determination of the admissibility of proffered experiment testimony rests within the discretion of the trial judge. This occurs whenever the dissimilarity between the occurrence conditions and the circumstances of the experiment is minor or can be made abundantly clear by explanation. Houston, East & West Ry. Co. v. Sherman, supra. Panhandle and Santa Fe Ry. Co. v. Haywood, Tex.Civ.App., 227 S.W. 347, wr. ref. (1921). See, Annotation, Experimental evidence as affected by similarity or dissimilarity of conditions, 85 A.L.R. 479."

We believe the instant case and the Williams case can be distinguished on the facts. Following the rule announced in the Williams case, we find that the appellants have not discharged their burden of showing that the court abused its discretion in admitting the slides and the motion pictures in evidence. We agree with the trial court that the color picture slides and motion pictures aided the jury in deciding the issues rather than confusing them because the dissimilarity of the conditions was made abundantly clear by explanation.

■ The jury answered Issue No. 31 that Howell failed to keep a proper lookout for the train and that such failure was a proximate cause of the collision. It also answered Issue No. 33 that he failed to look for the oscillating headlight; that

this was negligence and a proximate cause of the collision. It also answered Issue 36 that he failed to give heed to the oscillating headlight; that this was negligence and a proximate cause of the collision.

The appellants contend the court erred in submitting Issues Nos. 31 and 33 because 33 is repetitious of 31 and unduly stresses appellee's theory of the case. They also contend No. 33 is a comment on the weight of the evidence. They contend the court erred in submitting Issue No. 36 because it is repetitious and assumes material controverted issues.

We have concluded that appellants have failed to show that the errors in submitting said issues amounted to such a denial of their rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. In Indemnity Insurance Company of North America v. Carrell, Tex.Civ.App., 318 S.W.2d 744, (writ ref. n. r. e.), the court said:

"We fail to perceive error. If we be mistaken we think the omission of 'if any' in Issue 5, after consideration of all the pleadings and evidence in the case, is not such an error as to require a reversal. We think the error (if such be an error), falls within the holding of Mason v. Yellow Cab & Baggage Co., 153 Tex. 344, 269 S.W.2d 329; Texas Employers Ins. Ass'n. v. McKay, 146 Tex. 569, 210 S.W.2d 147; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191, and Cogbill v. Martin, Tex.Civ.App., 308 S.W. 2d 269. Such cases hold that although a special issue submitted to a jury may constitute an implied comment or instruction, because of assumption or apparent assumption of facts involved in terms in which it propounds a question (as the omission of 'if any', etc.), such issue does not always entail a reversal, since under the circumstances of the particular case, the force of the comment may be so weak that it either is no comment at all or may be said to be harmless."

We find no merit in appellants' point that there was an irreconcilable conflict in the jury's answers. They claim that the three findings (1) that Howell failed to keep a proper lookout (2) that he failed to look for the operating oscillating headlight (3) that he failed to give heed to the operating oscillating headlight are in fatal conflict with the jury's answer "He could not have stopped" to special issue 61 which is as follows:

"Do you find from a preponderance of the evidence that after the defendant's train became plainly visible and in hazardous proximity to the crossing in question, if it did, Jimmy Ray Howell by the exercise of ordinary care could not have stopped his automobile within fifty feet but not less than fifteen feet from the nearest rail of the railroad track?"

They contend that after applying the test set out in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, and Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772, a fatal conflict results. In the case of Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97, the Court said:

"It will never be presumed that jurors intend to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled. This is elementary."

In the instant case the findings do not destroy each other but can be reconciled. Also in the instant case there was no finding of causation following issue No. 61. In Todd v. La Grone, Tex.Civ.App., 234 S.W.2d 99, (Writ Ref. N.R.E.), the court said:

"Appellants assert that the answer of the jury finding that deceased McCormack did not fail to observe the signs of the road and the blinker light

and the answer that he failed to keep a proper lookout are in irreconcilable conflict. We do not think so. The deceased could have observed all highway signs and markers and yet could have failed to keep a proper lookout with respect to persons traveling the east and west highway. It is the duty of the trial court to reconcile the findings of the jury unless they are destructive of each other. Traders & General Ins. Co. v. Ross, 131 Tex. 562, 117 S.W.2d 423. The issues do not destroy each other but are reconcilable. Lewis v. Martin, supra [Tex.Civ.App., 120 S.W.2d 910]; Townsend v. Young, Dist. Judge, Tex.Civ.App., 114 S.W.2d 296."

We have considered all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.