Ralph CHEEK, Appellant,

v.

Joe ZALTA, Appellee.

No. B14–83–596CV

Court of Appeals of Texas,
Houston (14th Dist.).

April 25, 1985.
Rehearing Denied June 13, 1985.

John L. Fulbright, Bruce N. Smith, Smith & Thorne, Beaumont, for appellant.

Bernard L. Chanon, Ducoff & Chanon, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and DRAUGHN, JJ.

PAUL PRESSLER, Justice.

The plaintiff below recovered a judgment of $21,000 plus $10,000 in attorney's fees against appellant for violation of the Deceptive Trade Practices Consumer Protection Act, TEX.BUS. & COM.CODE ANN. § 17.41 et. seq. (Tex.UCC) (Vernon Supp. 1985). We affirm.

The parties entered into an agreement in 1978 whereby appellee would exchange his twenty-four foot Baja boat for a 1978 eighteen foot Caravelle boat which appellant had purchased to trade to appellee. Appellee testified that appellant represented that he was a Caravelle dealer and that the boat was a new, unused 1978 model. When appellee received the boat, he found it to be in need of repair and unsuitable for his use. Repairs were not under warranty and the desired insurance coverage could not be obtained.

The store manager for the Marine Company from which appellant bought the boat to sell to appellee testified that the boat was manufactured in 1976. The serial number on the boat when the sales contract was drawn revealed that it was manufactured in 1976. That date was subsequently changed to 1978.

Appellee filed suit in May 1980 claiming that appellant engaged in false, misleading, and deceptive acts during the course of their business dealings in violation of the Texas Deceptive Trade Practices Act (DTPA).

Appellant presents three points of error. In the first, he claims the trial court erred in overruling his objection to the submission of special issues five and six because these issues did not represent the correct measure of damages. They instructed the jury to find the market value of the boat as delivered to appellee and the market value of the boat as contracted for by the parties. Appellant argues that the proper measure of damages should be the difference between what the injured party gave and the fair market value of what he received.

■ A consumer who prevails under the Deceptive Trade Practices—Consumer Protection Act may obtain the amount of actual damages found by the trier of fact. TEX.BUS. & COMM.CODE ANN. § 17.-50(b)(1) (Tex.U.C.C.) (Vernon Supp.1985). "Actual damages" is not defined by the act. However, the term has been interpreted to mean damages recoverable at common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *Raye v. Fred Oakley Motors*, 646 S.W.2d 288, 290 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

■ Generally, "actual damages" has been held to be the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. *Id.* at 290. An alternative measure of damages is the difference between the amount actually paid by the defrauded party and the fair market value of the item delivered. *Sobel v. Jenkins*, 477 S.W.2d 863, 867–868 (Tex.1972); *Jack Criswell Lincoln-Mercury, Inc. v. Haith*, 590 S.W.2d 616, 619 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). *Sobel* was not a DTPA case, but one of fraud. There the Supreme Court rejected as the measure of damages the difference between the actual value of the product, a car, at the time of the sale and its value at that time if it had been new as represented. *Criswell* was brought under the Texas Consumer Fraud and Deceptive Trade Practices Act. It cited *Sobel* in its determination of damages. The court in *Raye v. Fred Oakley Motors* pointed out that when the cost equals market value, either measure of damage would yield the same amount. *Raye* at 290. Both *Sobel* and *Criswell* are cited by appellant in support of his position.

Appellee cites *Hyder-Ingram Chevrolet, Inc. v. Kutach*, 612 S.W.2d 687, 689 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ), in which this court held that the Deceptive Trade Practices-Consumer Protection Act allows a plaintiff to recover the greatest amount of "actual damages" he has established to be caused by defendant's conduct. *Hyder* did not involve a breach of warranty but deceptive and misleading practices. The damages in *Hyder* were determined to be the difference between the estimated cost of repairing appellee's car and the actual cost of repairing it, plus appellee's expenses. The *Hyder* court cited *Woo v. Great Southwestern Acceptance Corporation*, 565 S.W.2d 290 (Tex.Civ.App. —Waco 1978, writ ref'd n.r.e.) wherein the court allowed appellee to recover under the DTPA the price she paid for a distributorship minus the profit she earned from it. The court emphasized that the Act permits a plaintiff to recover the greatest amount of actual damages proven to be caused by the defendant's conduct in order to encourage consumers to litigate their grievances and deter unlawful conduct. *See Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 865 (Tex.App.—Amarillo 1983, no writ). *Woo* was distinguished in *Raye v. Fred Oakley Motors, Inc.*, 646 S.W.2d 288, 291 in which the court noted that in *Woo*, actual damages were measured by proof of the amount appellee paid, minus profits, because of the inability to prove market value of the distributorship.

■ The greater weight of authority in Texas favors the measure of damages used here by the trial court. *See Harrison v. Dallas Court Reporting College*, 589 S.W.2d 813, 816 (Tex.Civ.App.—Dallas 1979, no writ), a breach of warranty case; *Valley Datsun v. Martinez*, 578 S.W.2d

485, 490 (Tex.Civ.App.—Corpus Christi 1979, no writ), wherein the court qualified this measure of damages as proper in a breach of warranty case; *Sam Montgomery Oldsmobile Co. v. Johnson,* 624 S.W.2d 237, 243 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ), involving deceptive trade practices and breach of warranty. In *Salais v. Martinez,* 603 S.W.2d 296, 297 (Tex. Civ.App.—El Paso 1980, no writ) the court, citing *Woo,* emphasized that the plaintiff should recover the *greatest* amount of actual damages he has alleged and proven to be caused by defendant's conduct (emphasis added). The court in *Johnson v. Willis,* 596 S.W.2d 256, 262–263 (Tex.Civ.App.— Waco 1980), *writ ref'd n.r.e. per curiam* (on other grounds), 603 S.W.2d 828 (Tex. 1980) explained that in a common law tort action for fraudulent misrepresentation, Texas courts have adopted the measure of damages as the difference between the price paid and the value received. In actions for misrepresentations in the nature of breach of warranty, damages are measured by the difference between the value of the goods as warranted and the value as received. Therefore, to determine the proper measure under the DTPA, the court must look at the legislative intent, which is that recovery should reflect the greatest amount of actual damages alleged and proved. Thus, the proper measure is one that affords plaintiff the greatest recovery.

■ The reasoning set forth in *Johnson* and used by this court in *Hyder—Ingram Chevrolet, Inc. v. Kutach* is correct. The trial court did not err in overruling appellant's objection to the Special Issues. The proper measure of damages is the difference in market value of the boat appellee contracted to receive and the market value of the boat he did receive. The first point of error is overruled.

In his second point of error, appellant claims the trial court erred in admitting into evidence the photographs of the hull identification number on the Caravelle boat taken in September, 1982. He contends that the time span between the photograph and the delivery date in April of 1979 precludes their admission.

■ The trial court has broad discretion in ruling on the admissibility of photographic evidence; the issue on appeal is whether the trial court abused that discretion. *Lilley v. Southern Pacific Transportation Co.,* 584 S.W.2d 720, 723 (Tex. Civ.App.—Tyler 1979, no writ); *Briones v. Levine's Department Store, Inc.,* 435 S.W.2d 876, 882 (Tex.Civ.App.—Austin 1968), *aff'd,* 446 S.W.2d 7 (Tex.1969). When a photograph portrays facts relevant to an issue, it is admissible if verified by a witness as being a correct representation of the facts. 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1466 (Texas Practice 3d ed. 1980). The verifying witness must know the object involved and be able to state that the photograph correctly represents it. The fact that the scene or object photographed has changed since the time in question does not preclude its admission if the changes are explained such that the photograph will be helpful to the jury in understanding the nature of the conditions at the time of the controversy. *Id.; Howell v. Missouri—Kansas—Texas Railroad Co.,* 380 S.W.2d 842, 844 (Tex.Civ.App.—Eastland 1964, writ ref'd n.r.e.). A dispute as to the accuracy of some part of the photograph usually goes only to its weight and presents a fact-question for the jury. *Briones* at 882.

■ Here an independent boat appraiser and expert witness called by appellee testified that he took photographs of the boat in 1982 and that they truly and accurately represented the boat at that time. He testified that the purpose of his appraisal and testimony was to show that the identification numbers on the hull of the boat had been altered. The appraiser testified that he could discern the original number, which indicated the date of manufacture was 1975. The number has been changed to show the boat was manufactured in 1978. He explained that the last numbers on the hull and the title refer to the year of manufacture and they should be the same. The certificate of title appel-

lee received from appellant contained a 1978 manufacturing date although Caravelle boats were not manufactured in 1978. The store manager from whom appellant purchased the boat testified that the original date on the manufacturer's certificate of origin was 1976.

This conflict did not preclude the admission of the photographs but presented a question for the jury as to the weight to be accorded them. The second ground of error is overruled.

In his third point of error appellant complains that the trial court erred in admitting the testimony of appellee's attorney concerning his attorney's fees as this testimony was contrary to the amount appellee original requested in his pleadings.

Appellee framed his request for attorney's fees in two different ways in alternating paragraphs in the petition. In the next to last paragraph, he "alleges he is entitled to .... ($5,000) in attorney's fees ..." In the last paragraph he prays for "... attorney's fees of not less than ... ($5,000) which are reasonable in relation to the amount of work actually expended by plaintiff's attorney for costs of Court in this cause ..." In the absence of special exceptions, a petition will be liberally construed in favor of the pleader. *Yeager Electric & Plumbing Co., Inc. v. Ingleside Cove Lumber and Builders, Inc.,* 526 S.W.2d 738, 742 (Tex.Civ.App.—Corpus Christi 1975, no writ); *L & B Oil Co., Inc. v. Arnold,* 620 S.W.2d 191, 193 (Tex.Civ. App.—Waco 1981, writ dism'd).

 At no time prior to trial did appellant specially except to the variation in the paragraphs. The trial court did not rule on appellant's Motion to Strike the testimony or his objection to it at the time it was made. Subsequently a hearing was held on the matter of attorney's fees. The trial court signed the judgment following the hearing. If, upon objection to the testimony, the trial court had sustained the objection, it would have been necessary for appellee to have requested leave of court to file a trial amendment. *Yeager* at 743; TEX.R.CIV.P. 66. As the objection was

overruled and the petition was not excepted to in the pleading stage, the trial court properly admitted the testimony. The third ground of error is overruled.

The judgment of the trial court is affirmed.